## McCafferty v. Bowman

*Reilly & Pearce*, for plaintiff.
*R. Winfield Baile*, for defendant.

ERVIN, P. J., October 2, 1950.—This is a bill in equity for the specific performance of an agreement for sale of real estate. Under an agreement in writing made January 12, 1950, plaintiffs agreed to purchase from defendants premises No. 214 South Manoa Road, Haverford Township, Delaware County, Pa., at a purchase price of $8,750. The contract provided that purchasers pay a deposit of $500 at the signing of the agreement, $1,100 at settlement, a GI first mortgage at four percent interest for 20 years, of $6,750, and $400 within five days of the approval of the agreement. The $500 and $400 cash payments were made in accordance with the agreement. The agreement contained the following language:

"This agreement is made subject to the ability of the buyer in obtaining a V. A. Mortgage for 20 years in the sum of Sixty-seven hundred and Fifty Dollars. It is understood that should the buyer be unable to

secure the aforesaid mortgage, this agreement shall become null and void and the down money returned to the buyer. BUYER granted until 2/5/50 to obtain above MTG."

Then followed other provisions relative to matters not involved in the present controversy and then came the language: "Settlement to be made on or before May 1st, 1950, and said time is hereby agreed to be of the essence of this agreement."

The evidence revealed that plaintiffs promptly applied to the First Mortgage Corporation for the mortgage mentioned in the agreement and that on February 2, 1950, that company, by letter, advised:

"We are in receipt of VA Certificate of Reasonable Value on the above property, and as we already had the credit report, Verification of Employment and pictures of the property, we have approved the loan for the borrower."

The evidence also shows that prompt application was made to the Veterans Administration for their approval. The information contained in the letter of February 2, 1950, from the First Mortgage Corporation was promptly transmitted to the agents for the sellers. On February 2, 1950, defendants delivered to their agents the initial deposit of $500. On February 6, 1950, Albert Andrew Erwin, as agent of plaintiffs, was apprised of the fact that defendants desired to return the deposit money. On February 17, 1950, J. A. Boyce, agent of defendants, received a letter from defendants requesting him to return the deposit money since the agreement was void because the VA mortgage had not been obtained on or before February 5, 1950. A copy of this letter was sent by Boyce to Erwin, who in turn notified plaintiffs. The down money was never actually returned to plaintiffs or their agents. On February 14, 1950, the Veterans Administration issued a certificate for the mortgage and on March 7,

1950, issued a certificate of commitment for the mortgage and provided in it: "This commitment supersedes and cancels certificate issued 2-14-50."

In the Comment, A. L. I. Restatement of the Law of Contracts §275, it is stated:

"It is impossible to lay down a rule that can be applied with mathematical exactness to answer the problem—when does a failure to perform a promise discharge the duty to perform the return promise for an agreed exchange. Only such general principles based on the inherent justice of the matter as are stated in this Section can be asserted. Where the failure is at the outset, a very slight failure is often sufficient to discharge the injured party. But even in that case, and more obviously if the failure of a promisor occurs after part performance by him, the question becomes one of degree. Both the amount that he has done and the benefit that the injured party has received are considered. The question then to be answered is: Will it be more conformable to justice in the particular case to free the injured party, or, on the other hand, to require him to perform his promise, in both cases giving him a right of action if the failure to perform was wrongful. In the one case damages are based on breach of the whole contract; in the other on the loss caused by the partial breach. While the wilfulness of the breach, except in contracts for personal service, may not enhance the injury, yet it does so far increase the demerit of the wrongdoer that the law is less inclined if a breach is willful to require the injured party to perform."

The rules for determining materiality of delay in performance are stated in A. L. I. Restatement of the Law of Contracts, § 276, as follows:

"In determining the materiality of delay in performance, the following rules are applicable: (a) Unless the nature of a contract is such as to make per-

formance on the exact day agreed upon of vital importance, or the contract in terms provides that it shall be so, failure by a promisor to perform his promise on the day stated in the promise does not discharge the duty of the other party. (b) In mercantile contracts performance at the time agreed upon is important, and if the delay of one party is considerable having reference to the nature of the transaction and the seriousness of the consequence, and is not justified by the conduct of the other party, the duty of the latter is discharged. (c) If delay of one party in rendering a promised performance occurs before any part of his promise has been rendered, less delay discharges the duty of the other party than where there has been part performance of that promise. (d) In contracts for the sale or purchase of land delay of one party must be greater in order to discharge the duty of the other party than in mercantile contracts. (e) In a suit for specific performance of a contract for the sale or purchase of land, considerable delay in tendering performance does not preclude enforcement of the contract where the delay can be compensated for by interest on the purchase money or otherwise, unless (i) the contract expressly states that performance at or within a given time is essential, or (ii) the nature of the contract, in view of the accompanying circumstances, is such that enforcement will work injustice."

The following illustrations are in point:

"1. A contracts to sell and B to buy on February 1, Blackacre. A tenders a sufficient deed on February 2. B is bound to accept and pay the price. . . . 7. A agrees to sell, and B to buy Blackacre, for the price of $10,000, the transfer to be made on March 1. A tenders performance on March 1. B then states that he wishes to carry out the contract but has not the necessary price at the moment. A replies that unless immediate performance is made he will not carry out

the contract. On the following April 1, B sues for specific performance, making an offer in his pleading to pay with interest the agreed price. The contract may be specifically enforced."

In the Pa. Annotations to section 276 it is stated:

"Clause (d). Though time is set in a real estate sale contract, it is not of the essence, and specific performance can be decreed after the time set, where the conditions have not materially changed and performance is not inequitable." See cases cited.

A case very much in point is Morrell v. Broadbent, 291 Pa. 503. This was a bill for specific performance for the sale of real estate. The written agreement provided for a down payment of $500 on a total consideration of $20,000 and another payment of $500 before August 25th of the year in which it was signed. Final settlement was to be made on or before November 1st. Performance of the contract was resisted because the August 25th payment of $500 was not made on or before that date. Tender of all the purchase money was made on November 1, 1925. The lower court refused to decree specific performance and the appellate court reversed this decision. The contract contained the following clause: "Settlement to be made on or before November 1, 1925, and said time is hereby agreed to be the essence of this agreement." In commenting upon this provision, the appellate court said:

"The contract here involved contained such stipulation, but the dispute is whether it applies to all payments to be made or only to the time of final settlement. We are of opinion the latter construction is the proper one. The provisions for payment of the installments are found at the beginning of the written agreement. This language is followed by various details relating to liens and encumbrances, insurance, title, fixtures, taxes, date on which possession is to be delivered, etc., and then follows the clause 'settlement

to be made on or before November 1, 1925, and said time is hereby agreed to be the essence of this agreement.' Clearly, 'said time' refers to the date of the settlement which immediately precedes it, consequently, it is clear that was the only date the parties deemed of sufficient importance on which to require exact performance. Apparently they did not consider payment of the other installment,—a comparatively small amount,—of such serious consequence as to make its nonpayment a reason for terminating the contract." To the same effect see Appeal of Gentile et al., 43 D. & C. 53.

In the case at bar, plaintiffs actually obtained a VA mortgage for 20 years in the sum of $6,750. The most that could be said against them is that there was a slight delay in obtaining this mortgage. This delay was not caused by any acts of plaintiffs. Plaintiffs acted in good faith and promptly applied for the mortgage. They actually had a commitment from the First Mortgage Corporation on February 2, 1950, and it could be argued that this was an obtaining of the mortgage, but whether it was or not, the final commitment of the Veterans Administration was secured on March 7, 1950, and superseded a former one issued February 14, 1950. A. L. I. Restatement of the Law of Contracts, §276(c), is applicable to the facts in this case. Surely there was a part performance by plaintiffs of the agreement to procure the VA mortgage prior to February 5, 1950. This being so, a greater period of delay is tolerated. Furthermore, the agreement of sale in this case involves real estate and a greater delay in performance is allowed than is permitted in mercantile contracts. See section 276(d), supra. The fact that the parties made time of the essence in relation to the final settlement date of May 1, 1950, and did not make it of the essence in relation to February 5, 1950, is a clear indication that the parties themselves did not

consider the procuring of the VA mortgage on February 5, 1950, to be absolutely essential. The provision for the return of the down money upon failure to obtain the VA mortgage was for the benefit of plaintiffs. That being so, the slight delay in obtaining the mortgage should be excused unless that delay was caused by wilful acts of plaintiffs. In this case, it was not so caused, but was caused by the slow moving machinery of VA over which plaintiffs had no control. It might be argued that the provision that the buyer was granted until February 5, 1950, to obtain the above mortgage was for the benefit of defendants. If defendants intended that this date was to be of the essence, they could easily have so provided and then it would have been strictly enforced.

This disposition of the case makes it unnecessary to consider the other question raised by plaintiffs, to wit: waiver of strict compliance with the terms of the provisions by defendants.